IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

```
FILED
SEP 20 2019
CLERK, U.S. DISTRICT COURT
    NORFOLK, VA
```

**JOE HAND PROMOTIONS, INC.,**

    **Plaintiffs,**

v.                                **CIVIL ACTION NO. 4:18cv10**

**MAMBO GRILL, LLC**

and

**JORGE ALVEREZ**

    **Defendants.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Joe Hand Promotions, LLC ("Plaintiff") Motion for Default Judgement, pursuant to Rule 55(b)(1) of the Federal Rules of Civil Procedure. ECF No. 12. Plaintiff requests the Court to enter final judgement in this action against Mambo Grill, LLC and Jorge Alvarez ("Defendants"). For the reasons set forth below, Plaintiff's Motion for Default Judgement is **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a distributor of sports entertainment programming to commercial establishments with its principal place of business at 407 East Pennsylvania Blvd., Feasterville, Pennsylvania. ECF No. 1. Plaintiff entered into agreements with the promoters of *Ultimate Fighting Championship® 183: Silva v. Diaz* telecast nationwide on January 31, 2015 and *Gennady Golovkin v. David Lemieux* telecast nationwide on October 17, 2015 (the "Programs"), for the exclusive right to license the exhibition of the Programs to commercial establishments. ECF Nos. 1, 12-3,

12-4. Defendant Mambo Grill, LLC is a business establishment located at 6139 Jefferson Avenue, Suite L, Newport News, in the Eastern District of Virginia. ECF No. 1. Defendant Jose Alvarez is an individual residing in the Eastern District of Virginia. *Id.* On the dates that the Programs were exhibited, plaintiff contends that Defendant Jose Alvarez was (1) an officer director, shareholder, member and/or principal of the entity owning and operating the Establishment; (2) had a right and ability to supervise the activities of the Establishment; and (3) had an obvious and direct financial interest in the activities of the Establishment. *Id.* Defendant Bernarda Alvarez is an individual residing in the Eastern District of Virginia. On the dates that the Programs were exhibited, plaintiff contends that Defendant Bernarda Alvarez was (1) an officer director, shareholder, member and/or principal of the entity owning and operating the Establishment; (2) had a right and ability to supervise the activities of the Establishment; and (3) had an obvious and direct financial interest in the activities of the Establishment. *Id.*

Plaintiff alleges that on January 31, 2015, Defendants publicly exhibited the closed circuit, *Ultimate Fighting Championship® 183: Silva v. Diaz* broadcast, including all undercard bouts and the main prizefight at their establishment known as Mambo Grill ("Establishment"). ECF No. 1. Plaintiff further alleges that on October 17, 2015, Defendants publicly exhibited *Gennady Golovkin v. David Lemieux* broadcast, including all undercard bouts and the main prizefight at their Establishment. *Id.* Plaintiff argues that Defendant exhibited both Programs without authorization from Plaintiff. *Id.*

On January 29, 2018, Plaintiff filed a complaint against Defendants Mambo Grill, LLC, Brenda Alvarez, and Jorge Alverez, claiming Defendants violated the Federal Communications Act of 1934 as amended ("Communications Act"). *Id.* Specifically. Plaintiff asserts that Defendants did violate the anti-piracy sections of the Communications Act, 47 U.S.C. §§ 553 and

605. *Id.* As such, Plaintiffs seek statutory damages for each willful violation of 47 U.S.C. § 605, plus interest, costs, and attorney's fees. *Id.*

On April 18, 2018, Defendants Jose Alvarez and Mambo Grill were properly served with the Summons and Complaint, ECF No. 5, but no Answer was filed by either Defendant. Plaintiff did not execute service on Bernarda Alvarez, and on January 30, 2019, the Court issued an amended abatement order dismissing Defendant Bernarda Alvarez for failure to serve. ECF No. 9. On January 30, 2019, the Plaintiff requested the Clerk of the Court to enter a default, ECF No. 10, which the Clerk of Court granted on January 31, 2019. ECF No. 11. Plaintiff filed the instant Motion and supporting memorandum on February 27, 2019. ECF No. 12. In support of the Motion, Plaintiff submitted an affidavit of Joe Hand, Jr., Plaintiff's President, as well as affidavits of two private investigators. Plaintiff also submitted copies of both licensing agreements and corresponding rate cards. ECF No. 12.

## II. LEGAL STANDARD

### A. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Pursuant to Rule 55(a), the Clerk must enter default against a party that "has failed to plead or otherwise defend" against an action. After the Clerk has entered default, a plaintiff may seek a default judgment against a defendant pursuant to Rule 55(b). A court must "exercise sound judicial discretion" when considering whether to enter default judgment, "and the moving party is not entitled to default judgment as a matter of right." *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009) (citing *Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.) Inc.*, 486 F. Supp. 2d 496, 502 (E.D. Pa. 2007)). The United States Court of Appeals for the Fourth Circuit has expressed "a strong preference that, as a general matter, defaults be avoided and that claims and

defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Default judgment may be appropriate, however, "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Although a defaulting party admits the factual allegations in the complaint, a court must evaluate the sufficiency of the allegations to determine if the complaint states a cause of action. *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). *See also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The court must ... determine whether the well-pleaded allegations in [the] complaint support the relief sought in th[e] action."); *Anderson v. Found, for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to plaintiff where plaintiff failed to state a valid claim).

### B. Damages

If a court determines that the well-pleaded allegations in the complaint support relief in the form of damages, the Court must establish the damages to which Plaintiff is entitled. *See J & J Sports Prods., Inc. v. Brutti's LLC*, No. 2:14CV269, 2014 WL 7363823, at *7 (E.D. Va. Dec. 23, 2014). Allegations relating to the amount of damages are not deemed admitted by default. Fed. R. Civ. P. 8(b)(6). Thus, if the court determines that a plaintiff has established liability, the court cannot accept as true factual allegations and must therefore make an independent determination regarding damages. *J & J Sports Productions, Inc., v. Panana, LLC*, 2014 WL 5454323, at *1 (D. Md. Oct. 24, 2014). In determining the appropriate sum, the court may rely on affidavits or

documentary evidence in the record. *Id.* As a general matter, relief granted upon default judgment may not exceed the amount demanded in the pleadings. *See* Fed. R. Civ. P. 54(c).

### III. DISCUSSION

In the Complaint, Plaintiff alleges Defendant violated 47 U.S.C. §§ 553 and 605. ECF No. 1. Section 553 provides:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
>
> Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.

47 U.S.C. § 553(a)(1); (c)(1).

In relevant part, § 605 states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
> . . .
>
> For purposes of this section . . . the term "any person aggrieved" shall include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming . . . .
>
> . . .
>
> Any person aggrieved by any violation of subsection (a) of this section . . . may

bring a civil action in a United States district court or in any other court of competent jurisdiction.

47 U.S.C. § 605(a); (d)(6); (e)(3)(A).

Plaintiff is precluded from double recovery for the same conduct. *See The Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 666 (E.D. Va. 2013). Plaintiff elected in the Complaint to proceed under § 605 to seek recovery. ECF No. 1. The Court will evaluate the sufficiency of Plaintiff's Complaint, i.e., whether Plaintiff has established Defendant's liability under § 605.

### A. Plaintiff's Claim Under 47 U.S.C. § 605

Plaintiff alleges the following facts pertaining to liability, which are admitted by Defendant's default and accepted by this Court as true:

Plaintiff, for commercial gain, entered into a closed-circuit television license agreement to exhibit the Programs at various closed-circuit business locations such as restaurants, bars, clubs, and lounges, throughout Virginia. ECF No. 1 at ¶¶ 8–10. Plaintiff paid substantial fees for its licenses. *Id.* at ¶ 10. Plaintiff marketed the closed-circuit rights granted to it. *Id.* Unintended for use by the general public, only Plaintiff's authorized commercial establishments could exhibit the Programs. *Id.* at ¶¶ 9, 10. Plaintiff distributed its closed-circuit rights to customers who paid Plaintiff a fee. *Id.* at ¶ 10. Plaintiff, through its agents, contracted with these establishments. *Id.* Plaintiff's paying establishments are "authorized" to receive, transmit, and publish the Programs. *See Id.* at ¶ 11. The Programs was electronically coded or "scrambled" and only Plaintiff's authorized customers were given the electronic decoding capability and/or satellite coordinates required to receive the Programs' signal. ECF No. 12 at ¶ 15.

Though the transmission was available to Defendant for purchase, Defendant did not contract with Plaintiff or any of its agents to obtain rights to broadcast the Programs. ECF No. 1

at ¶ 11. Defendant was never authorized to intercept, receive, or transmit the communication of the Programs. *Id.* at ¶ 12. Nevertheless, Defendant intercepted and then published the Programs to its patrons at Mambo Grill on January 31, 2015 and October 17, 2015. *Id.* at ¶¶ 12, 13. Defendant committed these actions for commercial advantage and private financial gain. *Id.* at ¶ 14.

Plaintiff's Complaint clearly states that the Programs originated as a satellite signal, which would qualify as a radio communication under § 605. *Id.* at ¶ 9; *See Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1008 (2d Cir. 1993). Furthermore, Plaintiff alleges that as a result of its proprietary rights in the intercepted communication of the Programs, obtained via substantial fees it paid for its License Agreement, Plaintiff is a "person aggrieved" as defined in § 605(d)(6) and is entitled to damages. ECF No. 1 at ¶¶ 17, 19.

Therefore, the Court finds that Plaintiff has sufficiently pleaded necessary facts in its Complaint that, when taken as true, establish Defendant's liability for violating § 605 and support the Court's issuance of a default judgment in Plaintiff's favor.

**B. Damages**

Under § 605, the computation of damages is at the election of the aggrieved party. 47 U.S.C. § 605(e)(3)(C)(i). The aggrieved party may recover actual damages and any profits of the violator attributable to the violation. 47 U.S.C. § 605(e)(3)(C)(i)(I). The aggrieved party also has the option of recovering statutory damages ranging from a minimum of $1,000.00 to a maximum of $10,000.00. 47 U.S.C. § 605(e)(3)(C)(i)(II). The exact amount of statutory damages is within the sound discretion of the court, as it "considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). The court may also, in its discretion, increase or "enhance" the award of damages, whether actual or statutory, by an amount of not more than $100,000.00 if "the court finds the violation was

committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). If actual damages are difficult to prove, statutory damages are appropriate. *J & J Sports Productions, Inc. v. Brazilian Paradise, LLC,* 789 F.Supp.2d 669, 675 (D.S.C. Apr. 27, 2011). In prior cases, Plaintiff has been awarded statutory damages because the default of various defendants rendered Plaintiff unable to conduct discovery. *See id.* Irrespective of whether damages are awarded, the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees" to the aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(iii).

### 1. Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II)

Courts in the Eastern District of Virginia have generally employed one of two methods to determine statutory damages—employing a per patron rate or using a flat fee based on the unpaid sublicense fee. *Joe Hand Promotions, Inc., v. The Wing Spot Chicken & Waffles, Inc.,* 920 F.Supp.2d 659, 667 (E.D. Va. 2013). The accepted per patron rate in this district is $100.00. *J & J Sports Productions, Inc., v. Wing Bistro LLC,* 2013 WL 6834645, at *7 (E.D.Va. Dec. 19, 2013). Courts using this method, however, are typically reviewing cases involving patrons that number less than 100. *See id.* (applied where approximately 40 customers were present); *Joe Hand Promotions, Inc. v. Citibars, Inc.,* 2012 WL 503212, at *5 (E.D. Va. Feb. 8, 2012) (applied where average of 49 customers were present); *Joe Hand Promotions, Inc., v. Veltsistas, LLC,* 2011 WL 5826059, at *2 (E.D. Va. Oct. 21, 2011) (applied where average of 50 customers were present) (adopted by *Joe Hand Promotions, Inc. v. Veltsistas, LLC,* 2011 WL 5826082 (E.D. Va. Nov. 18, 2011); *Joe Hand Promotions, Inc., v. Bougie, Inc.,* 2010 WL 1790973, at *5 (E.D. Va. Apr. 12, 2010) (applied where 10 customers were present).

Courts that assess a flat fee based on the unpaid sublicense fee calculate it based on the maximum occupancy of the establishment. *See J & J Sports Productions, Inc. v. Lara Sport House Corp.*, 2011 WL 4345114, at *6 (E.D. Va. Aug. 26, 2011) (awarding $2,200 in statutory damages based on 80–person occupancy rate where average of 46 persons present) (adopted by *J & J Sports Productions, Inc. v. Lara Sport House Corp.*, 2011 WL 4345098, at *1 (E.D. Va. Sept. 14, 2011): *J & J Sports Productions, Inc. v. Benson*, 2007 WL 951872, at *5 (E.D.N.Y. Mar. 27, 2007) (awarding $1,200 in statutory damages based on 50–person occupancy rate where only five persons present). Where defendant's establishment is at or near capacity during the unlawfully televised broadcast, an award of the maximum in statutory damages, $10,000.00 may granted. *See J & J Sports Productions, Inc., v. Great Latin Restaurants*, 2011 WL 5873071, at *5 (E.D. Va. Sept. 15, 2011) (finding maximum appropriate where 200 to 350 patrons were present in an establishment with a capacity of 400 persons) (adopted by *J & J Sports Productions, Inc., v. Great Latin Restaurants*, 2011 WL 5873093, at *1 (E.D. Va. Nov. 22, 2011)).

In its supporting memorandum, Plaintiff requests $5,000.00 in statutory damages for each of Defendants' violations. ECF No. 12 at 17. In its supporting affidavits, Plaintiff utilizes the findings of two investigators. On both dates, fewer than 100 patrons were observed inside Mambo Grill. One investigator for the Plaintiff stated that on January 31, 2015, she counted the number of patrons present during the *Ultimate Fighting Championship® 183: Silva v. Diaz* telecast three times, resulting in head counts of 3, 3, and 4. ECF No. 12-7 at 1. Another Plaintiff's investigator stated that on October 17, 2015, he counted the number of patrons present during the *Gennady Golovkin v. David Lemieux* telecast three times, resulting in head counts of 22, 20, and 23. ECF No. 12-8 at 2.

In its determination of the appropriate amount of statutory damages, the Court will employ the per patron rate of $100.00. *J & J Sports Productions, Inc., v. Wing Bistro LLC*, 2013 WL 6834645, at *7 (E.D. Va. Dec. 19, 2013). The Court uses an average of each investigator's head count to determine the approximate number of patrons present during each broadcast. This method results in an award of $2,500.00 total, or $300.00 for the violation observed on January 31, 2015 and $2,200.00 for the violation observed on October 17, 2015. *See* ECF No. 12-7, 12-8. Therefore, the Court finds it appropriate to award Plaintiff statutory damages in the amount of $2,500.00, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

### 2. Enhanced Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)

*a. Willfulness of Defendants' Violation of the Communications Act*

An award of enhanced damages is primarily based on whether a willful violation of the Communications Act is present. 47 U.S.C. § 605(e)(3)(C)(ii). The Supreme Court of the United States has interpreted willful behavior to include "a disregard for the governing statute and an indifference to its requirements." *TransWorld Airlines v. Thurston*, 469 U.S. 111, 127 (1985). Enhanced damages have been awarded to offset the defendant's gain and to deter the defendant from future misconduct. *Veltsistas, LLC*, 2011 WL 5826059, at *3.

Plaintiff has alleged that its signal cannot be mistakenly intercepted. ECF No. 12 at 11–12. As stated in similar cases, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Time Warner Cable of New York City v. Googies Luncheonette*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). Defendant did not enter a licensing agreement with Plaintiff so it is clear that whatever method Defendant employed to intercept and exhibit Plaintiff's signal required a willful act. *Id.* Whether by use of a "blackbox" "smartcard," or "cable splice," the purchase of illegal satellite authorization codes, or the

purposeful misrepresentation as a residential property to allow fraudulent purchase of Plaintiff's programming, or some other means, Defendant willfully and unlawfully intercepted and broadcast Plaintiff's Programs without regard for § 605 and its requirements. Therefore, the Court concludes Defendants' violation of the Communications Act was willful.

### b. Enhanced Damages for the Defendants' Violation of the Communications Act

In determining the amount awarded for enhanced statutory damages, the Court considers the following factors: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks. *Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d at 667–68.

Courts have routinely declined to award the maximum in enhanced damages. Indeed, with rare exception, the awards are significantly less. *See J & J Sports Productions, Inc. v. Margarita Latino Corp.*, 2013 WL 3270573, at *4 (E.D. Va. June 26, 2013), *J & J Sports Productions v. El Tropicabana*, LLC, 2013 WL 3270563, at *4 (E.D. Va. June 26, 2013), *The Wing Spot Chicken & Waffles, Inc.*, 920 F.Supp.2d at 669. Notwithstanding the need for deterrence, courts are mindful that one violation is not severe enough to justify putting a defendant out of business. *See The Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d at 669.

Based on repeat violations, Facebook advertisement, and the need for deterrence, Plaintiff requested enhanced damages of $20,000.00 for each violation. ECF 12 at 17. The Court is mindful that as a commercial establishment, Defendants may have profited from increased sales of food and drink without lawful access to Plaintiff's Communication Act property. However, the impact of the Defendants' violations is not extensive based on the factors outlined in *Wing Spot Chicken*

*& Waffles, Inc.* The Court will now conduct an examination of each factor to assist in determining the proper amount of enhanced damages.

Pursuant to Factor One, Plaintiff alleges two violations via affidavits by its investigators on January 31, 2015 and October 17, 2015. ECF Nos. 12-7, 12-8. While there is more than a single violation of the Communications Act alleged in the investigator affidavits, they establish just two violations, not a system or pattern of violations over a long period. Factor Two examines substantial unlawful monetary gain, but the Defendants had an average of 3 people in Mambo Grill at the time of the violation on January 31, 2015 and 22 people during the violation on October 17, 2015. ECF Nos. 12-7, 12-8. The Court finds it unlikely that such sparse patronage would result in a large monetary gain for restaurant with a capacity of around 100. Factor Three examines whether there were significant actual damages to the Defendant. According to Plaintiff's Rate Cards, Defendants should have paid Plaintiff either $900.00 or $1,100.00 for their January 31, 2015 violation and $1,200 for their October 15, 2015 violation. ECF Nos. 12-5, 12-6. Plaintiff's actual damages for these violations are undoubtedly higher than the access fees listed on Plaintiff's Rate Cards. However, Plaintiff's damages are not significantly higher after considering the relative emptiness of Mambo Grill during the Defendants' violations. *See* ECF Nos. 12-7, 12-8. The Court further notes that Defendants took out a single Facebook advertisement for its October 17, 2015 violation, which is relevant in the Court's consideration of Factor Four. Pursuant to Factor Five, the Court notes that Mambo Grill sold food during each violation, but the Plaintiff has not alleged that the Defendants initiated any cover charge.

After consideration of the facts of this case the Court finds that $5,000.00 is sufficient to offset Defendant's gain and to deter Defendant from future misconduct.

3. **Attorney's Fees and Costs**

The Court finds that Plaintiff has demonstrated attorney's fees in the amount of $2,750.00.

Plaintiff has demonstrated costs of $700.00 in pursuit of the judgment in this case.

## IV. CONCLUSION

For the reasons stated herein, Petitioner's Motion for Default Judgement is **GRANTED**. The Court ENTERS a default judgment in favor of Plaintiff in the aggregate amount of $10,950.00. This amount represents $2,500.00 in statutory damages, $5,000.00 in enhanced statutory damages, $700.00 in costs, and reasonable attorney's fees in the amount of $2,750.00.

**IT IS SO ORDERED.**

Norfolk, Virginia
September /9 , 2019

Raymond A. Jackson
United States District Judge